O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN POUND,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of the Social<br>Security Administration,<br><br>　　　　　Defendant. | Case No. EDCV 11-2039-JPR<br><br>MEMORANDUM OPINION AND ORDER<br>AFFIRMING THE COMMISSIONER |

**I.　PROCEEDINGS**

　　Plaintiff seeks review of the Commissioner's final decision denying his application for Social Security Disability Insurance Benefits ("DIB"). The parties consented to the jurisdiction of the undersigned U.S. Magistrate Judge pursuant to 28 U.S.C. § 636(c). This matter is before the Court on the parties' Joint Stipulation, filed September 4, 2012, which the Court has taken under submission without oral argument. For the reasons discussed below, the Commissioner's decision is affirmed and this action is dismissed.

## II. BACKGROUND

Plaintiff was born on March 30, 1951. (Administrative Record ("AR") 84.) He has a GED and is able to communicate in English. (AR 137, 142.) Plaintiff has at various times claimed different onset dates for his alleged disability, but they are all in the first half of 2008. (See, e.g., AR 127 (Jan. 2, 2008), AR 138 (May 5, 2008).)

On October 17, 2008, Plaintiff filed his application for DIB. (AR 127-31.) After it was denied, he requested a hearing before an Administrative Law Judge ("ALJ"), which was held on September 8, 2010. (AR 22.) Plaintiff, who was represented by counsel, testified at the hearing. (AR 26-57.)

On November 5, 2010, the ALJ denied Plaintiff's claim. (AR 10-18.) She first found that Plaintiff last met the insured status requirements of the Social Security Act on December 31, 2009, and had not engaged in substantial gainful activity from the alleged onset date of May 5, 2008, to that date. (AR 12.) She then determined that Plaintiff had the severe impairment of "thoracolumbar spine strain." (Id.) She found, however, that as of the date last insured, Plaintiff retained the residual functional capacity ("RFC")[1] to perform "medium work," with some limitations. (AR 13.) "Specifically, the claimant can lift 50 pounds occasionally and 25 pounds frequently; the claimant can sit, stand and/or walk for 6 hours out of an 8-hour workday with

---

[1] RFC is what a claimant can still do despite existing exertional and nonexertional limitations. 20 C.F.R. § 416.945(a); see Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

frequent ladders, ropes and scaffolds; the claimant is limited to frequent posturals and due to the side effects of medication, is limited to work involving 1 to 2 step instructions." (Id.) She further found that for a variety of reasons, Plaintiff was only partially credible. (AR 13-15.) She agreed with the VE that Plaintiff was capable of performing the jobs of small-products assembler, cleaner, products deliverer, and house cleaner and that those jobs existed in significant numbers in the national and regional economies; thus, the ALJ found Plaintiff not disabled. (AR 17.)

On December 10, 2010, Plaintiff requested review by the Appeals Council. (AR 5-6.) On November 17, 2011, the Council denied Plaintiff's request for review. (AR 1-4.) This action followed.

**III. STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The Commissioner's or ALJ's findings and decision should be upheld if they are free of legal error and are supported by substantial evidence based on the record as a whole. § 405(g); Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). Substantial evidence means such evidence as a reasonable person might accept as adequate to support a conclusion. Richardson, 402 U.S. at 401; Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007). It is more than a scintilla but less than a preponderance. Lingenfelter, 504 F.3d at 1035. To determine whether substantial evidence supports a finding, the reviewing court "must review the

administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1996). "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner. Id. at 720-21.

**IV.   THE EVALUATION OF DISABILITY**

People are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity because of a physical or mental impairment that is expected to result in death or which has lasted, or is expected to last, for a continuous period of at least 12 months. 42 U.S.C. § 423(d)(1)(A); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

    A.   The Five-Step Evaluation Process

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4); Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995) (as amended Apr. 9, 1996). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. § 404.1520(a)(4)(I). If the claimant is not engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability to do basic work activities; if not, a finding of not disabled is made and the claim is denied. § 404.1520(a)(4)(ii).

4

If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R. Part 404, Subpart P, Appendix 1; if so, disability is established and benefits are awarded. § 404.1520(a)(4)(iii). If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient RFC to perform his past work; if so, the claimant is not disabled and the claim must be denied. § 404.1520(a)(4)(iv). The claimant has the burden of proving that he is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets that burden, a prima facie case of disability is established. Id. If that happens or if the claimant has no past relevant work, the Commissioner then bears the burden of establishing that the claimant is not disabled because he can perform other substantial gainful work in the economy. § 404.1520(a)(4)(v). That determination comprises the fifth and final step in the sequential analysis. Id.; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

B. The ALJ's Application of the Five-Step Process

At step one, the ALJ found that Plaintiff had not engaged in any substantial gainful activity from the onset of his alleged disability, May 5, 2008, to the date last insured, December 31, 2009. (AR 12.) At step two, the ALJ concluded that Plaintiff had the severe impairment of "thoracolumbar spine strain." (Id.) At step three, the ALJ found that Plaintiff did not have an

impairment or combination of impairments that met or equaled any of the impairments in the Listing. (AR 13.) At step four, the ALJ found that as of December 31, 2009, Plaintiff had the RFC to perform "medium work" with the following limitations: "the claimant can lift 50 pounds occasionally and 25 pounds frequently; the claimant can sit, stand and/or walk for 6 hours out of an 8-hour workday with frequent ladders, ropes and scaffolds; the claimant is limited to frequent posturals and due to the side effects of medication, is limited to work involving 1 to 2 step instructions." (AR 13.) The ALJ concluded that Plaintiff was unable to perform his past relevant work as a heavy equipment operator, auto mechanic, and auto painter. (AR 16.) At step five, the ALJ found, based on the VE's testimony and application of the Medical-Vocational Guidelines, that jobs existed in significant numbers in the national and regional economies that Plaintiff could perform. (AR 16-17.) The ALJ agreed with the VE that Plaintiff could perform such "representative occupations" as small-products assembler, cleaner, products deliverer, and house cleaner. (AR 17.) The ALJ noted that the vocational expert's testimony was consistent with the Dictionary of Occupational Titles. (Id.) Accordingly, the ALJ determined that Plaintiff was not disabled. (Id.)

Plaintiff does not challenge any of the ALJ's determinations at steps one through four of the process. Rather, he challenges various aspects of the ALJ's step-five analysis.

**V.   DISCUSSION**

Plaintiff alleges that the ALJ erred because (1) her finding that he could perform the jobs of small-products assembler,

cleaner, products deliverer, and house cleaner was inconsistent with her RFC determination and the DOT, and she did not clarify the discrepancy with the vocational expert (J. Stip. at 3-12); (2) she improperly considered Plaintiff's daily activities in determining whether he could perform substantial gainful work activity (J. Stip. at 21-24); and (3) she did not fully and fairly develop the record (J. Stip. at 28-31).

    A.    <u>The ALJ's Finding that Plaintiff Could Perform Certain Jobs Was Inconsistent with Her Finding that Plaintiff Could Follow Only One- or Two-Step Instructions; However, Any Error Was Harmless</u>

Plaintiff asserts that the ALJ's finding as part of her RFC determination that he could perform only "1 to 2 step instructions" because of "the side effects of medication" was inconsistent with her finding that he could perform the designated jobs because each of them involves at least level-two reasoning skills under the DOT, and that reasoning level requires understanding of more than one- and two-step instructions. (J. Stip. at 4-12.)  Further, Plaintiff complains, the ALJ did not clarify this discrepancy with the vocational expert. (J. Stip. at 12.)

    1.    <u>Applicable law</u>

At step five of the five-step process, the Commissioner has the burden to demonstrate that the claimant can perform some work that exists in "significant numbers" in the national or regional economy, taking into account the claimant's RFC, age, education, and work experience. <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1100 (9th Cir. 1999); 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1560(c).

The Commissioner may satisfy that burden either through the testimony of a vocational expert or by reference to the Medical-Vocational Guidelines appearing in 20 C.F.R. Part 404, Subpart P, Appendix 2.  <u>Tackett</u>, 180 F.3d at 1100-01; <u>see also</u> <u>Hill v. Astrue</u>, 688 F.3d 144, 1152 (9th Cir. 2012).  When a VE provides evidence about the requirements of a job, the ALJ has a responsibility to ask about "any possible conflict" between that evidence and the DOT.  <u>See</u> SSR 00-4p, 2000 WL 1898704, at *4; <u>Massachi v. Astrue</u>, 486 F.3d 1149, 1152-54 (9th Cir. 2007) (holding that application of SSR 00-4p is mandatory).  An ALJ's failure to do so is procedural error, but the error is harmless if no actual conflict existed or the VE provided sufficient evidence to support the conclusion.  <u>Massachi</u>, 486 F.3d at 1154 n.19.

### 2. Relevant facts

At various times, Plaintiff has complained that the vicodin he sometimes took[2] to control his back pain made him "nauseated" (AR 28, 39), "not want to eat" (<u>id.</u>),[3] and "tired" (AR 178).  On the other hand, Plaintiff has never claimed that it affected his judgment or ability to follow instructions.  On his work history

---

[2] Although Plaintiff claimed at the hearing to have been taking vicodin twice a day since first seeing a doctor for his pain (AR 38-39), the medical evidence of record shows that as of October 2009, he had not had his prescriptions refilled since March of that year.  (AR 206.)

[3] Plaintiff claimed at the September 2010 hearing that as a result of the medicine's effect on his appetite, he had lost 30 pounds in the prior 12 months and then weighed 185 pounds.  (AR 27-28.)  In May 2009, however, Plaintiff's weight was also 185 pounds.  (AR 203.)

report, which Plaintiff filled out on November 8, 2008, during the alleged period of disability, Plaintiff indicated that his memory, concentration, understanding, and ability to follow instructions were not affected by his condition. (AR 159.) He indicated "good" when asked how well he followed written and spoken instructions. (Id.) Similarly, no doctor has ever found Plaintiff to have any limitation on his ability to follow instructions as a result of his condition or the medicine he sometimes took for it. See, e.g., AR 197 (examining doctor finds that "claimant is alert, well-oriented, has good memory function, calm mood and behavior, and no communication disorder"). At the hearing, Plaintiff testified that he likes to watch "CSI" and documentaries on television and has no difficulty following the storylines except for occasionally falling asleep. (AR 34.) The transcript of the hearing shows that Plaintiff understood and answered all the questions put to him, and the ALJ did not make any findings to the contrary. Before developing his back condition, Plaintiff performed jobs that required reasoning levels of three and four, specifically, automobile mechanic, 1991 WL 685242, DICOT 620.261-010 (reasoning level four); auto-body repairer, 1991 WL 681514, 807.381-010 (level three); painter, 1991 WL 681878, 845.381-014 (level three); and heavy-equipment operator, 1991 WL 681950, 859.683-010 (level three). (AR 57-59.)

    Despite all this, the ALJ included in some of her hypotheticals to the vocational expert (as well as in her RFC determination) that Plaintiff was limited to performing jobs with only one- or two-step instructions. (AR 59.) Although the ALJ did not expressly ask the VE if her findings were consistent with

the DOT, the VE testified as follows:

> Let's see. One to two steps, I think that hypothetical person would be able to – now, see, this is where I'm gonna have to double check my – he's limited to frequent posturals. I've gotta be careful not to get in [INAUDIBLE]. Bear with me. I mean, I've got to check the – the companion to the DOT, just to make sure [INAUDIBLE]. Okay. With that hypothetical, the person would be able to work as a cleaner II, cleaner of vehicles. . . . With that hypothetical, the person would be able to work as a deliverer of merchandise. . . . Let me just check one other one, here. Okay. Okay, it looks like we – with that hypothetical, then the person would be able to work as a house cleaner, hotel and motel.

(AR 60-61.)

Other than in the RFC, the ALJ did not reference, much less explain, in her hearing decision the basis for the limitation on following instructions.

### 3. Analysis

Plaintiff is correct that the ALJ's finding that he was limited to jobs involving just one- and two-step instructions was inconsistent with her finding that Plaintiff could perform jobs requiring reasoning level two or greater. Appendix C of the DOT defines reasoning level one as requiring the following aptitudes:

> Apply commonsense understanding to carry out simple one- or two-step instructions. Deal with standardized situations with occasional or no variables in or from these situations encountered on the job.

1991 WL 688702. Level two, on the other hand, requires that an employee

> [a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations.

(Id.) Clearly, then, reasoning level two is meant to require an aptitude greater than being limited to carrying out one- or two-step instructions. See Grigsby v. Astrue, EDCV 08-1413-AJW, 2010 WL 309013, *3 (C.D. Cal. Jan. 22, 2010). Because all the jobs the ALJ identified Plaintiff as being capable of performing require level-two reasoning skills or greater, the ALJ's RFC determination was inconsistent with her finding that Plaintiff could perform those jobs. As in Grigsby,

> Defendant contends that someone who can perform "simple and repetitive work" is not precluded from all Level 2 reasoning jobs, and therefore plaintiff can perform the Level 2 reasoning jobs identified by the vocational expert.[4] That argument misses the mark. Level 2 reasoning jobs may be simple, but they are not limited to one- or two-step instructions. The restriction to jobs involving no more than two-step instructions is what distinguishes Level 1 reasoning from Level 2 reasoning. There is no legal or factual basis for . . . elliding the difference between the DOT's definitions of Level 1 reasoning and Level 2 reasoning.

---

[4] See J. Stip. at 13-21.

Id. at *2 (citation and emphasis omitted). For the reason identified in Grigsby, most of the cases relied upon by the Commissioner are easily distinguished: they do not involve an express limitation to "one- or two-step instructions" but rather merely to "simple" instructions. Those cases that do involve the exact limitation at issue here all appear to have been decided by the same judge, and to the extent they conflict with Grigsby, this Court finds the latter more persuasive. Finally, despite the ALJ's statement in her decision that the VE's testimony that Plaintiff could perform those jobs was consistent with the DOT, it plainly was not, and the ALJ never asked the VE to clarify or explain the inconsistency. Thus, the ALJ erred.

    Reversal is not necessary, however, because any error was harmless. First, although the VE's testimony was not a model of clarity, she clearly understood the ALJ's limitation to one- and two-step instructions and took it into account in finding that Plaintiff was capable of performing the jobs she cited. (AR 60 (VE referencing "one to two steps," stating that she was checking the DOT, and then finding that Plaintiff could perform the specified jobs).) More importantly, however, no conflict actually existed between the DOT's description of the jobs the VE listed and Plaintiff's ability to perform them because absolutely nothing in the record supports the ALJ's finding that Plaintiff could not understand and follow more than one- and two-step instructions. No doctor made any such finding, and Plaintiff himself has never claimed that his medicines affected his ability to concentrate or follow instructions. Plaintiff, who has a high school equivalency diploma, has performed jobs with much higher

1  reasoning levels in the past, and the medical evidence of record
2  provides no reason to believe that he is incapable of reasoning
3  at those levels now.  Plaintiff himself stated that his memory,
4  concentration, and ability to follow instructions were all
5  unimpaired, and no doctor found otherwise.  Thus, unlike in
6  Grigsby, here "[t]here is [a] legal [and] factual basis for
7  ignoring the ALJ's express finding that Plaintiff is limited to
8  jobs involving only 'two steps of instruction.'"  See 2010 WL
9  309013 at *2.

10       Accordingly, even though the ALJ's RFC finding concerning
11  Plaintiff's ability to follow instructions was inconsistent with
12  her finding that Plaintiff could perform jobs at reasoning level
13  two and the ALJ erred in not seeking further clarification from
14  the VE, any error was necessarily harmless.  The ALJ's isolated
15  sentence in the hearing decision was not supported by any
16  evidence in the record, medical or otherwise.  See Stout v.
17  Comm'r, 454 F.3d 1050, 1055 (9th Cir. 2006) (nonprejudicial or
18  irrelevant mistakes harmless); Lee v. Astrue, 472 F. App'x 553,
19  555 (9th Cir. 2012) (ALJ's failure to include claimant's
20  personality disorder as "severe" impairment at step two harmless
21  when ALJ later accounted for impairment at step four); Wright v.
22  Comm'r of Soc. Sec., 386 F. App'x 105, 109 (3d Cir. 2010)
23  (Tashima, J., sitting by designation) (ALJ's misstatements in
24  written decision harmless error when regardless of them "ALJ gave
25  an adequate explanation supported by substantial evidence in the
26  record"); Castel v. Comm'r of Soc. Sec., 355 F. App'x 260, 265-66
27  (11th Cir. 2009) (ALJ's erroneous reference to wrong medical
28  reports harmless when he referred to reports "in two sentences"

but "dedicate[d] two paragraphs" to correct reports, and disability decision conformed to medical evidence). Thus, reversal is not warranted.

    B.   <u>The ALJ Properly Considered Plaintiff's Daily Activities</u>

Plaintiff asserts that the ALJ erroneously determined, based on the "daily activities plaintiff engaged in," that he was not credible and therefore "not disabled." (J. Stip. at 23.)

        1.   <u>Applicable law</u>

An ALJ's assessment of pain severity and claimant credibility is entitled to "great weight." <u>See</u> <u>Weetman v. Sullivan</u>, 877 F.2d 20, 22 (9th Cir. 1989); <u>Nyman v. Heckler</u>, 779 F.2d 528, 531 (9th Cir. 1986). When the ALJ finds a claimant's subjective complaints not credible, the ALJ must make specific findings that support the conclusion. <u>See</u> <u>Berry v. Astrue</u>, 622 F.3d 1228, 1234 (9th Cir. 2010). Absent affirmative evidence of malingering, the ALJ must give "clear and convincing" reasons for rejecting the claimant's testimony. <u>Lester</u>, 81 F.3d at 834. If the ALJ's credibility finding is supported by substantial evidence in the record, the reviewing court "may not engage in second-guessing." <u>Thomas v. Barnhart</u>, 278 F.3d 947, 959 (9th Cir. 2002).

        2.   <u>Relevant facts</u>

The ALJ recounted at some length various activities Plaintiff had engaged in that were inconsistent with the pain he claimed to be in, including mowing the lawn, driving, and cooking. (AR 14.) The ALJ also noted that he had sought "minimal treatment" for his back, seeing the doctor only twice in

14

a year and a half and not scheduling a four-week checkup recommended by the doctor. (AR 14, 15.) The ALJ found that

> [o]verall, the claimant is partially credible. The claimant's testimony that he has not worked since 2007 apart from a few days in 2008 is inconsistent with the earnings records and the claimant's admission in the work history report, dated November 8, 2008, that he did not stop working until July 3, 2008. Moreover, the claimant testified he was investigated for fraud for filing concurrent unemployment and State disability claims in 2008.
>
> Additionally, the activities reported in the claimant's function reported [sic], including getting his children ready for school, driving daily, cooking and light cleaning are inconsistent with his testimony at the hearing, where claimant testified to much more limited daily functioning. Further, the claimant testified that he is extremely limited in his ability to walk, and can only walk for 5 minutes before needing to sit down; [h]owever, the undersigned notes that he is able to ambulate without the assistance of any devices and only asserted need of an ambulatory assistive device when questioned about why he has not requested one from his doctor.
>
> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's

15

>statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

(AR 14-15.)

### 3. Analysis

As the Commissioner points out, the ALJ discussed Plaintiff's daily activities primarily to show that he was only a "partially credible" witness. (J. Stip. at 27.) The ALJ recited many instances of inconsistencies and other discrepancies between Plaintiff's claimed activities and his actual ones, none of which Plaintiff disputes as a factual matter other than to assert that Plaintiff's symptoms had gotten worse by the time of the hearing. The ALJ's reliance on these discrepancies was proper. See Thomas, 278 F.3d at 958-59; Batson v. Comm'r, Soc. Sec. Admin., 359 F.3d 1190, 1196-97 (9th Cir. 2004) (adverse credibility determination supported in part by conflict between claimant's allegation he could not return to work because of pain and testimony that he tended to his animals, among other activities).

Moreover, the ALJ gave several other reasons for finding Plaintiff not credible – none of which Plaintiff challenges and all of them supported by evidence in the record – including inconsistencies between his statements as to when he last worked and the evidence of record (AR 13-14, 28-30, 133, 138, 139, 146, 162); the fact that he applied for unemployment insurance and disability benefits at the same time and was investigated for fraud as a result (AR 13-14, 30-31), see Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1161-62 (9th Cir. 2009) (noting

16

1  that applying for unemployment benefits is inconsistent with
2  disability because one has to hold oneself out as "available,
3  willing and able to work"); and the fact that Plaintiff had
4  sought very little treatment for his allegedly incapacitating
5  back pain (AR 14-15, 38, 191-95, 213), see Tommasetti v. Astrue,
6  533 F.3d 1035, 1039 (9th Cir. 2008) (ALJ may infer that
7  claimant's "response to conservative treatment undermines
8  [claimant's] reports regarding the disabling nature of his
9  pain"); Johnson v. Shalala, 60 F.3d 1428, 1434 (9th Cir. 1995)
10 (holding that "contradictions between claimant's testimony and
11 the relevant medical evidence" provided clear and convincing
12 reasons for ALJ to reject plaintiff's subjective symptom
13 testimony); Flaten v. Sec'y of Health & Human Servs., 44 F.3d
14 1453, 1464 (9th Cir. 1995) (ALJ may properly
15 rely on minimal medical treatment).  Even when a claimant's daily
16 activities do "not suggest [he] could return to his old job,"
17 they may "suggest that . . . later claims about the severity of
18 his limitations were exaggerated." Valentine v. Astrue, 574 F.3d
19 685, 693 (9th Cir. 2009).
20      Accordingly, the ALJ properly considered Plaintiff's daily
21 activities.  Further, even if the ALJ did err, any error was
22 necessarily harmless in light of all the other reasons the ALJ
23 gave for finding Plaintiff not entirely credible and not
24 disabled.  See Carmickle, 533 F.3d at 1162 (holding that when ALJ
25 provides specific reasons for discounting Plaintiff's
26 credibility, decision may be upheld even if certain reasons were
27 invalid as long as "remaining reasoning and ultimate credibility
28 determination" were supported by substantial evidence).

### C. The ALJ Properly Developed the Record

Plaintiff claims that the ALJ should have ordered either that the MRI Plaintiff claimed to have had done in 1999 be subpoenaed or that Plaintiff be given a new MRI examination. (J. Stip. at 28-31.)

The ALJ has an independent duty to develop the record in order to make a fair determination as to disability. Tonapetyan, 242 F.3d at 1150. But it is the plaintiff's duty to prove that she is disabled. Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001) (citing 42 U.S.C. § 423(d)(5) (Supp. 2001), and Clem v. Sullivan, 894 F.2d 328, 330 (9th Cir. 1990)); see also 20 C.F.R. § 404.1512(c) ("You must provide medical evidence showing that you have an impairment(s) and how severe it is during the time you say that you are disabled.").

Here, Plaintiff, who was represented by counsel throughout the proceedings, did not provide sufficient medical evidence to show that he was disabled, despite numerous opportunities to do so and his affirmative statement that he would. At the hearing, the ALJ noted that no medical evidence of any kind supported Plaintiff's claim that he had been diagnosed with scoliosis. (AR 53.) Plaintiff stated that he would "have my doctor fax – fax that stuff in to you," which would presumably include any previous MRI. (Id.) And the ALJ stated that she would "consider that if it's submitted." (Id.) Plaintiff never provided the records, including the MRI, to the ALJ, nor any explanation for not doing so. He also appears not to have submitted any additional evidence with his appeal to the Appeals Council. (AR 1-2.) The ALJ properly acted under the assumption that Plaintiff

18

1 would, as he had promised, provide her with any additional
2 necessary records. Cf. Burch v. Barnhart, 400 F.3d 676, 682 (9th
3 Cir. 2005) (no reversible failure from ALJ's failure to develop
4 record concerning Plaintiff's obesity because she was represented
5 by counsel and never submitted additional evidence to appeals
6 council or on appeal to show alleged full effect on RFC of her
7 obesity).

8     Moreover, an ALJ's duty to develop the record further is
9 triggered only when the record contains ambiguous evidence or is
10 inadequate to allow for proper evaluation of the evidence.
11 Mayes, 276 F.3d at 459-60 (citing Tonapetyan, 242 F.3d at 1150).
12 Here, the evidence was not ambiguous and the record was not
13 inadequate. All of the clinical and laboratory tests and
14 examinations that were performed on Plaintiff demonstrated that
15 at most he had only slightly abnormal cervical issues. Although
16 Dr. Walter Bramson did find that Plaintiff was unable to work,
17 his finding was based entirely on Plaintiff's subjective pain
18 symptoms recounted to him during the course of two meetings; his
19 own tests showed normal functioning (AR 194), and as the ALJ
20 noted, unlike Dr. Bramson, she found Plaintiff not fully credible
21 (AR 15). The consultative doctor's examination of Plaintiff
22 likewise showed that he was "essentially normal . . . claimant is
23 physically non-severe." (AR 204.) Thus, the record was not
24 ambiguous. And nor was it inadequate. In 2009, during the
25 period of alleged disability, x-rays were taken of Plaintiff's
26 spine; they showed only "slight narrowing of the L5-S1 disc space
27 and small anterolateral osteophytes at the L3, L4, and L5
28 vertebrae." (AR 200, 203.) The x-rays primarily showed "normal

spine alignment" and "maintenance of the normal vertebral heights." (AR 200.) The x-rays constituted sufficient evidence to support the ALJ's finding that Plaintiff was not disabled, particularly when considered with the entirely consistent clinical findings of the examining and consultative doctors. An MRI Plaintiff had had done a decade before his claimed disability began would have been unlikely to aid the ALJ's disability determination. And a more recent MRI was not necessary given the recent x-rays and clinical findings all showing that Plaintiff had at most only slight cervical abnormality.

**VI. CONCLUSION**

Consistent with the foregoing and pursuant to sentence four of 42 U.S.C. § 405(g),[5] IT IS ORDERED that judgment be entered AFFIRMING the decision of the Commissioner and dismissing this action with prejudice. IT IS FURTHER ORDERED that the Clerk serve copies of this Order and the Judgment on counsel for both parties.

DATED: October 2, 2012

JEAN ROSENBLUTH
JEAN ROSENBLUTH
U.S. Magistrate Judge

---

[5] This sentence provides: "The [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."